**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ACEBEDO & JOHNSON, LLC, | ) | |
| IDL QUAD GROUP, LLC, and | ) | |
| MEDICAL LEGAL CONSULTANTS | ) | |
| OF GREATER ATLANTA, LLC, | ) | CIVIL ACTION |
| on behalf of themselves and all others | ) | |
| similarly situated, | ) | NO. 1:18-cv-02688-MLB |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WORLDPAY US, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |
| ——————————————— | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

This is the second of two putative class actions filed by plaintiffs'

counsel against Defendant Worldpay US, Inc. ("Worldpay").[1] In the first,

*Alghadeer Bakery & Market, Inc. v. WorldPay US, Inc.*, Civil Action Number

1:16-cv-03627-MLB (N.D. Ga. filed 2016) (hereinafter, "*Alghadeer*"), they

---

[1] Plaintiffs' counsel have brought similar cases against Worldpay's competitors, making allegations that in many respects mirror those made here. *See, e.g., Cobra Tactical, Inc. v. Payment Alliance Int'l Inc.*, Civil Action No. 1:17-cv-1827-MHC (N.D. Ga. filed 2017) (dismissed); *Zam & Zam Super Market, LLC v. Ignite Payments, LLC*, 2:16-cv-06370 (E.D.N.Y. filed 2016) (dismissed); *New Beginnings Healthcare for Women, LLC v. EVO Payments International, LLC*, Civil Action No. 2:17-cv-03650-JFB-SIL (E.D.N.Y. filed 2017) (pending).

accuse Worldpay of "inflating" certain fees that it charges its customers—businesses that accept credit and debit cards as a form of payment, known in the parlance of the industry as "merchants." Although the claims asserted in that litigation have evolved, the primary theory animating the case remains one of an alleged breach of contract.

In *Alghadeer*, Worldpay moved to dismiss, and at the Court's request, refiled that motion as one for partial summary judgment, based largely on the terms of the parties' Customer Processing Agreement ("CPA"). Among other things, Worldpay pointed to provisions of the parties' contract that (i) expressly permit Worldpay to amend terms and modify pricing; and (ii) require that customers alert Worldpay's legal department of perceived billing discrepancies in writing within a set time after receiving a monthly statement (rather than, *e.g.*, waiting months or years to first raise questions or concerns). As notices of supplemental authority filed by Worldpay in *Alghadeer* make clear, both this Court and courts outside of the Northern District (including, most recently, the Second Circuit) have dismissed similar putative class actions based on such contract terms alone.

Worldpay's converted summary judgment motion in *Alghadeer* remains pending. In the meantime, plaintiffs' counsel initiated this action in an attempt to maneuver around the referenced contract terms. First, they have come forward with proposed class representatives with especially old iterations of Worldpay's CPA that contain what they describe as "materially different" terms than those at issue in *Alghadeer*. And, second, they amp up the ferocity of their accusations, now claiming that Worldpay engaged in "fraud" and suggesting that its alleged wrongdoing should permit them to rescind their agreements and avoid the contract provisions they find unhelpful.

Unsurprisingly, Worldpay disagrees with the accuracy of Plaintiffs' factual allegations. In countless respects, they are simply wrong. But even if everything Plaintiffs say were true, their pleading would remain defective for at least three reasons as a matter of law. First, the form of the Complaint is improper. It is precisely the sort of shotgun pleading the Eleventh Circuit has criticized as "wreak[ing] havoc on the judicial system[.]" *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006). Second, Plaintiffs have not asserted a plausible claim for fraudulent inducement or rescission.

They have not pointed to actionable misrepresentations, and the relief they seek is untimely and unattainable. And, third, their claim for unjust enrichment is precluded by the existence of express contracts between the parties.

Respectfully, Plaintiffs' Complaint should be dismissed.

**FACTUAL ALLEGATIONS**

In a meandering diatribe spanning more than seventy pages, Plaintiffs heap criticism and hyperbolic accusations upon Worldpay. They pile on with unflattering online reviews, then resort to making bizarre allusions to a criminal indictment filed against representatives of a wholly unaffiliated payments company in another state. (*See, e.g.*, Compl. [Dkt. 1] ¶¶ 68-69 & 86-87.)[2] But stripped of impertinent content, Plaintiffs' allegations are actually straightforward: the pricing Worldpay charged Plaintiffs over the duration of their processing agreements did not, in

---

[2] Plaintiffs also include several allegations related to each of their unique frustrations with Worldpay, ranging from bungled attempts at termination to unhelpful interactions with customer care. Presumably included for the purpose of painting Worldpay in an especially unfavorable light, such allegations seem out of place in putative class action premised on the idea that common questions prevail over such individualized issues.

Plaintiffs' reckoning, align with that set forth in their original merchant applications.

Rather, per Plaintiffs, Worldpay introduced certain fees and purported to pass through "costs" that were higher than the interchange rates, assessments, and fees actually imposed on *it* by the card brands (*e.g.*, Visa, MasterCard, Discover, and American Express). Specifically, Plaintiffs contend that Worldpay "increased" or "added": "(a) new annual fees, (b) new fees for the PCI programs [related to the security of payment card data], (c) new fees for PCI non-compliance/non-validation, (d) new and increased minimum processing fees, (e) categorically improper pass through fees on tiered pricing customers, (e) [*sic*] marked-up pass through fees, and (f) increased processing fees." (*Id.* ¶¶ 45 & 213.) Plaintiffs then go on to allege that contract provisions expressly allowing Worldpay to add or increase fees (including the ones they challenge) were either ineffectual or improperly invoked, including provisions stating that: [3]

**5.2    Deduction of Processing Charges.**. . . Bank or [Worldpay] with Bank's approval from time to time may amend the Fee Schedule. The

---

[3]    Although Plaintiffs attempt to sow confusion about which terms and conditions are in play (*see* Compl. ¶¶ 154-164), this is a red herring. Plaintiffs themselves have attached the relevant terms and conditions as exhibits to the Complaint, leaving no doubt as to what the operative contractual terms are.

prices set forth in an amended Fee Schedule shall be effective on the date specified in the notice thereof, which date shall not be fewer than 15 days after the date of the notice. Each such revised or supplemental Fee Schedule shall thereafter be deemed a material part of this Agreement. . . .

**5.5     Additional Expenses.**        The Processing Charges set forth in the accompanying Fee Schedule may be adjusted to reflect increases, decreases, or new interchange, assessments, or other fees by the Card Associations, or to pass through increases charged by third parties for online communications and similar items . . . . All such adjustments shall be Customer's responsibility to pay and shall become effective the day such increases or decreases are assessed to Bank or [Worldpay].

**11.9     Entire Agreement; Modification; Waiver; Section References.** . . . Worldpay and the Bank shall have the right to modify the terms and conditions of this Agreement, including any Addendum, which right shall include, without limitation, the ability to modify, amend, or supplement the fees set forth on the Customer Processing Agreement, by providing notice thereof to you (the "<u>Change Notice</u>"). The Change Notice may direct you to a link or on-line address that contains an updated version of these CPA Terms. Such modifications, amendments, or supplements shall become effective upon the date stated in the Change Notice, provided the date shall not be fewer than 15 days after the date of the Change Notice, unless the notice relates to a change in the Rules made by the Payment Network, a change in the fees charged by the Payment Networks, or a change in applicable laws, rules, or regulations (collectively, a "<u>Third Party Change</u>"), in which case the modification, amendment, or supplement shall be effective upon the earlier of the date stated in the Change Notice or upon the date the Third Party Change is or was implemented by the Payment Network or applicable governing authority. In the event of any modification of this Agreement by Worldpay or the Bank as contemplated in this Section 11.9, you shall have the right to terminate the Payment Services Agreement or the Addendum which was amended, without the payment of any early termination fee . . . , by providing written notice thereof to Worldpay and the Bank, provided such notice must be given within 15 days following the date of the Change Notice, and provided further, no such right to terminate shall apply in the event the modification relates to a Third Party Change . . . .

(*See* Compl. at Exs. D & E.)

Based on these allegations, Plaintiffs ask the Court to certify a class of "all United States customers of [Worldpay] who contracted for payment processing services and paid a fee not listed in the Customer Processing Agreement." (*Id.* ¶ 193.) Substantively, they assert claims against Worldpay for fraudulent inducement (Count One), seeking "damages and/or rescission" (*id.* ¶ 218); breach of contract and breach of the covenant of good faith and fair dealing (Count Two); and unjust enrichment (Count Three). (*Id.* ¶¶ 208-238.)

## ARGUMENT AND CITATION TO AUTHORITY

### I.    Plaintiffs' Complaint is an Impermissible "Shotgun" Pleading

Each of the three substantive counts in the Complaint—alleging fraudulent inducement, breach of contract, and unjust enrichment— incorporate the first 192 paragraphs of the pleading. Those paragraphs, in turn, comprise everything from (i) the procedural history of the *Alghadeer* proceedings (*id.* ¶¶ 3-10); (ii) a smattering of negative online reviews (*id.* ¶¶ 68-69); (iii) a summary of an indictment against agents of an unrelated payments company in New York (*id.* ¶ 87); (iv) Plaintiff Acebedo & Johnson, LLC's ("Acebedo") frustrating experiences after endeavoring to terminate its merchant account, including attempted (but ineffective) debits

to its bank account following such termination (*id.* ¶¶ 106-108); (v) Plaintiff Medical Legal Consultants of Greater Atlanta, LLC's ("MLC") disappointing experiences with customer care, its online merchant portal, and communications with its sales agent regarding fees (*id.* ¶¶ 142-149); (vi) discrepancies between the CPA Worldpay has on its system and the one MLC purportedly signed (*id.* ¶¶ 150-153), which Plaintiffs attribute to "out-and-out fraud and forgery"; (vii) preemptive challenges to the enforceability of the terms contained in the CPAs (*id.* ¶¶ 157-190), which track the claims asserted in *Alghadeer* and on which Worldpay has moved for partial summary judgment; and (viii) arguments regarding the inapplicability of the voluntary payment doctrine. (*Id.* ¶¶ 191-192.) The foregoing allegations, not lacking in colorful rhetoric, may supply enticing soundbites for an external audience.[4] But is unclear how many of them actually form the basis for Plaintiffs' substantive claims and, if so, to which claims they relate.

---

[4] Notably, just two business days after Plaintiffs made their filing, the Atlanta Business Chronicle ran an article that quoted liberally from the pleading. *See* David Allison, *Federal Lawsuit Claims Worldpay US Defrauding, Overcharging Customers*, ATLANTA BUSINESS CHRONICLE (Jun. 4, 2018), *available at* https://www.bizjournals.com/atlanta/news/2018/06/04/federal-lawsuit-claims-worldpay-us-defrauding.html.

Indeed, many of the allegations seem to lack any logical nexus with the elements of the claims Plaintiffs purport to pursue.

Such a "shotgun" pleading, *i.e.*, one that "incorporate[s] all of the general factual allegations by reference into each subsequent claim for relief[,]" is impermissible. *Ferrell v. Durbin*, 311 Fed. App'x 253, 259 (11th Cir. 2009); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). As this Court has observed:

> [T]he Eleventh Circuit does not require the court to "sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted," **and has specifically instructed district courts to prohibit such shotgun pleadings as fatally defective**. To allow such a pleading would place an unjustifiable burden on the Court to take on the virtually impossible task of "ascertain[ing] what factual allegations correspond with each claim and which claim is directed at which defendant."

*Lindsay v. Bank of Am. Home Loans*, No. 1:15-CV-2074-ELR-LTW, 2016 WL 4546654, at *4 (N.D. Ga. Feb. 1, 2016) (citations omitted; emphasis supplied).

For that reason alone, Plaintiffs' Complaint should be dismissed.[5]

---

[5] At a minimum, Plaintiffs should be made to re-plead any claims that may remain after resolution of Worldpay's Motion to Dismiss in such a way that the Court and Worldpay can understand which factual allegations are actually being relied upon in support of any claim.

**II.** **Plaintiffs' Claim for Fraud and Rescission Should be Dismissed**

    **A.** **Plaintiffs Have Not Pled a Viable Claim for Fraudulent Inducement**

Making virtually no effort to supply the particularity required by Rule 9(b), Plaintiffs allege generally that Worldpay "intentionally and fraudulently induced the identified Plaintiffs and the Class members to enter into contracts . . . through its material omissions and material affirmative promises of pricing terms[.]" (*See* Compl. ¶ 209.) Although the precise omissions and promises remain unclear, the gist of Plaintiffs' claim appears to be that the pricing terms reflected on their initial merchant applications "did not accurately reflect the rates and fees [Worldpay] would *ultimately* charge merchants[.]" (*Id.* ¶ 211 (emphasis supplied).) Instead, they contend that Worldpay intended, at least eventually, to introduce different pricing, including "(a) new annual fees, (b) new fees for the PCI programs, (c) new fees for PCI non-compliance/non-validation, (d) new and increased minimum processing fees, (e) categorically improper pass through fees on tiered pricing customers, (e) [*sic*] marked-up pass through fees, and (f) increased processing fees." (*Id.* ¶ 213.) Stated differently, Plaintiffs appear to contend that Worldpay engaged in "fraud" by (a) planning to add or alter

processing fees after the inception of the parties' agreement; and (b) passing

through interchange, fees, and assessments imposed by the card brands at

higher than its actual cost.

Neither theory works.

1. *Additional and amended fees cannot supply the basis for a fraud claim*

From the outset, Plaintiffs' claims related to Worldpay's unarticulated

"scheme" to add or increase fees following the execution of the relevant

CPAs runs headlong into the law's general hostility to fraud claims based

on forward-looking statements and omissions. *See, e.g.*, *Edwards v. Cent.*

*Georgia HHS, Inc.*, 558 S.E.2d 815, 817 (Ga. Ct. App. 2002) ("statements and

promises as to future events" cannot serve as basis for fraud claim);

*Infrasource, Inc. v. Hahn Yalena Corp.*, 613 S.E.2d 144, 146 (Ga. Ct. App. 2005)

("Georgia law is abundantly clear that '[a]n obligation to disclose must exist

before a party may be held liable for fraud based upon the concealment of

material facts.' In the absence of a confidential relationship, no duty to

disclose exists when parties are engaged in arm's-length business

negotiations; in fact, an arm's-length relationship by its nature excludes a

confidential relationship.").[6] But the flaw with Plaintiffs' fraudulent inducement claim in this case is even more fundamental.

The cornerstone of Plaintiffs' claim—and even their proposed class definition—is that Worldpay somehow represented that the pricing set forth in a merchants' initial application would govern the parties' relationship forever and for all time. There could be no "new" fees, such as "(a) new annual fees, (b) new fees for the PCI programs, (c) new fees for PCI non-compliance/non-validation, [or] (d) new and increased minimum processing fees," nor could there be any "(f) increased processing fees." (Compl. ¶ 213.) Planning to impose such fees, then, was not only a breach of contract; it was "fraud."

The plausibility of that theory, however, is gutted by the exhibits Plaintiffs attach to their pleadings. *See Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) (in the event of a conflict between the allegations of a complaint and its exhibits, the exhibits control). Nothing in the parties' contracts suggests that the pricing contained in the original applications

---

[6]     Plaintiffs seem to assume that all of their claims, including fraudulent inducement, are governed by Georgia law. For purposes of its Motion to Dismiss, Worldpay therefore relies principally on Georgia authorities herein. It respectfully reserves the right to address the choice-of-law question in greater detail should the need arise.

was set in stone. To the contrary, the parties' contracts expressly, and repeatedly, contemplate that fees could be amended, adjusted, and changed. (*See* Compl. at Exs. D & E.)[7]

Succinctly put, Plaintiffs could not justifiably rely on some ill-defined promise that their pricing would remain static when the CPAs expressly memorialized Worldpay's right to amend that pricing for any number of reasons. While Plaintiffs can quibble with the enforceability and application of those provisions *vis-à-vis* a particular fee, they can hardly claim to have been "defrauded" into thinking that their pricing would never change when their contracts said precisely the opposite.

2.   *Allegedly "inflated" and "categorically improper" fees cannot supply the basis for a fraud claim*

Plaintiffs also contend that Worldpay elected to pass through certain card brand interchange rates, fees, and assessments at higher than its "true"

---

[7]     It is unclear whether Plaintiffs allege that something said by a sales agent led them to believe that the pricing contained in the merchant applications would remain forever static. But to the extent Plaintiffs' fraudulent inducement claim is predicated upon the dialogue leading up to the CPAs' execution, it fails in light of the contracts' integration clauses. *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 785 (Ga. 2001) ("As a matter of law, a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of deceit based upon pre-contractual representations."); *Ainsworth v. Perreault*, 563 S.E.2d 135, 138 (Ga. Ct. App. 2002).

costs, which Plaintiffs appear to derive from publicly available schedules published by the card brands. (*See, e.g.*, Compl. ¶¶ 59 & 61.) And they likewise take aim at certain fees charged to merchants who had elected tiered-rate pricing, which they complain were "categorically improper." (*Id.* ¶¶ 56-57 & 213.) All of the charges, Plaintiffs contend, were not mere breaches of contract, but "fraud."

From Worldpay's perspective, Plaintiffs' allegations rest on a misreading of the relevant processing statements and an incomplete understanding of the fees and assessments that are (to borrow from Plaintiffs' rhetorical arsenal) "crammed down" on Worldpay from the card brands. But, again, the flaw with Plaintiffs' claim is more fundamental. Sending out invoices that allegedly seek more than what one party is contractually entitled to receive, while perhaps actionable as a breach of contract, is not fraud. Indeed, courts have consistently rejected attempts to alchemize pricing disputes between contracting parties into fraud claims.

The reason is simple. Fraud requires an actionable misrepresentation—not merely a failure to follow the pricing terms set forth in an agreement. And courts have repeatedly refused to treat line items on

an invoice as representations that the amounts listed were only those permitted by the parties' contract—including in circumstances, like here, where one party alleges that the line items reflect "inflated" costs or unrecoverable fees bundled under an inapplicable descriptor. As explained by the district court in *Braswell Wood Co. v. Waste Away Group, Inc.*, No. 2:09-CV-891-WKW, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010):

> [E]ven accepting that the charges were not in accord with the contract, [plaintiff's] definition of a "misrepresentation" is exceptionally broad. The contract provided for certain types of charges. The fact that those charges were possible via the terms of the contract cannot have been a misrepresentation in itself. Invoices received by customers reflected that those charges had been levied in various amounts. Neither was that a misrepresentation; it was entirely true that [defendant] was levying fuel, landfill, and other surcharges in those amounts. **Whether those amounts were appropriate or correct under the contract was another matter, but every incipient billing dispute is not a "misrepresentation" from the time a bill is mailed to a customer, even if the customer ultimately prevails on the merits of the dispute . . . .** [T]o hold that a wrongfully charged fee constitutes, in itself, a misrepresentation, would be to broaden the word's meaning . . . past the point of meaning.

*Id.* at *4 (emphasis supplied; dismissing claim based on allegedly fraudulent "double billing" of charges that were supposed to be included in original contract price); *accord Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819

F.2d 151, 152 (6th Cir. 1987) ("The fact that the parties take different positions under the contract as to the appropriate prime rate, or the fact that the defendant charged too high a 'prime rate' and thereby concealed or refused to disclose what the plaintiff considers the true prime rate called for under the contract, does not give rise to a valid claim for fraud."); *Almanza v. United Airlines, Inc.*, 162 F. Supp. 3d 1341, 1357 (S.D. Ga. 2016), *aff'd* 851 F.3d 1060 (11th Cir. 2017) (holding likewise with respect to taxes assessed on customers that were not in fact due); *Bigsby v. Barclays Capital Real Estate, Inc.*, 170 F. Supp. 3d 568, 574 (S.D.N.Y. 2016) (rejecting fraud claim based on alleged billing, under heading of "attorney's fees," of various other fees that were not recoverable under the parties' agreement).

Put simply, if Worldpay charged Plaintiffs certain fees that were either not authorized by the parties' agreements or higher than the amounts contemplated (both of which Worldpay denies), then Plaintiffs can pursue that claim as one for breach of contract. They cannot, however, transform that claim into one for "fraud."

### B. Plaintiffs are not Entitled to Rescission

For all the reasons set forth above, Plaintiffs' claim for fraudulent inducement is facially defective. But even if a sliver of the claim were

somehow to survive (and it should not), their request for rescission is untenable.

Rescission, after all, is a fleeting and fragile right. It must be exercised "in a timely fashion, *as soon as* the facts supporting the claim for rescission are discovered." *Workers Compensation Legal Clinic of Louisiana v. BellSouth Telecomms., Inc.*, 374 F. Supp. 2d 1215, 1220 (N.D. Ga. 2005) (emphasis supplied; quoting *Weed Wizard Acquisition Corp. v. A.A.B.B., Inc.*, 201 F. Supp. 2d 1252, 1260-61 (N.D. Ga. 2001)). Indeed, "[a]s a general rule, rescission must occur prior to, and as a condition precedent to, the bringing of an action; it is too late to claim rescission by asserting it for the first time in the pleadings." *Wender & Roberts, Inc. v. Wender*, 518 S.E.2d 154, 160 (Ga. Ct. App. 1999). Furthermore, the right to rescind is easily waived by taking *any* action "inconsistent with the repudiation of the contract." *BellSouth Telecomms., Inc.*, 374 F. Supp. 2d at 1220. "Once a claim for rescission is waived," moreover, "it cannot be revived[.]" *Holloman v. D.R. Horton, Inc.*, 524 S.E.2d 790, 795 (Ga. Ct. App. 1999).

Here, Plaintiffs' own allegations demonstrate the unavailability of rescission as a remedy. It is not just that they have failed to allege any

tender of the benefits they received under the CPAs. *Wender & Roberts, Inc.*, 518 S.E.2d at 159 ("A party seeking to rescind a contract for fraud must restore or tender back the benefits received under the contract, or show a sufficient reason for not doing so."). Nor is it merely their affirmative assertion of claims based on the CPAs that precludes such a remedy. *BellSouth Telecomms., Inc.*, 374 F. Supp. 2d at 1221 ("Plaintiff has asserted and maintained a separate action for breach of contract . . . . Thus, the Plaintiff has affirmed the . . . agreements and has thereby waived any right to rescind these contracts."). Rather, they concede that they discovered what they contend was Worldpay's "fraud" *years* ago. (*See* Compl. ¶¶ 104, 129 (recounting that each Plaintiff discovered allegedly improper billings in 2016 or, at latest, early 2017).) Assuming they ever had a right to rescind, it was incumbent on them to exercise the right *then*. By delaying, and at least in some cases taking affirmative action *pursuant to* the CPAs (*see, e.g., id.* ¶ 104), they waived the right rescind as a matter of law.

### III.  Plaintiffs' Claim for Unjust Enrichment is Also Defective

Count Three of Plaintiffs' Complaint, in which they seek recovery on a theory of unjust enrichment, is defective for the same reasons the claim fails in *Alghadeer*.

As this Court has observed, "unjust enrichment is only available in the absence of an enforceable contract." *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009). And, here, each Plaintiff acknowledges that it signed a CPA with Worldpay. Those contracts, not nebulous concepts of "equity and good conscience," govern the parties' rights and obligations to one another.

In an implicit nod to that principle (and apparent attempt to avoid its preclusive effect here), Plaintiffs assert that their unjust enrichment "claim is brought *only in the alternative* and is contingent upon Defendant's contracts with Plaintiffs and the Class members being deemed fraudulently induced and subject to rescission, ineffective, inapplicable, void, or otherwise unenforceable." (*See* Compl. ¶ 233 (emphasis supplied).) But as explained above, Plaintiffs are not entitled to rescission. And they have not actually pled any claim seeking to hold the CPAs "ineffective, inapplicable, void, or

otherwise unenforceable." Even their preemptive attack on the CPAs take aim at particular *terms*, not the agreement as a whole.

As this Court has elsewhere made clear, a plaintiff cannot prosecute a claim for unjust enrichment "in the alternative" when neither party *legitimately* contests the existence of an express contract governing the subject of the dispute. *See Goldstein*, 609 F. Supp. 2d at 1347. And Plaintiffs have mounted no such contest. The only claim they have asserted that could even theoretically nullify their agreements—rescission—fails as a matter of law. For that reason, Count Three of Plaintiffs' Complaint should likewise be dismissed.

## CONCLUSION

Worldpay respectfully requests that Plaintiffs' Complaint be dismissed. The form of the pleading is improper. And they have not alleged viable claims for fraudulent inducement, rescission, or unjust enrichment.

[ *Signature of Counsel Appears on the Following Page* ]

Respectfully submitted this 13th day of July, 2018.

ARNALL GOLDEN GREGORY LLP

/s/ Edward A. Marshall
Edward A. Marshall
Ga Bar No. 471533
edward.marshall@agg.com
Theresa Y. Kananen
Ga Bar No. 478998
theresa.kananen@agg.com
Megan P. Mitchell
Ga Bar No. 916934
megan.mitchell@agg.com

171 17th St. NW, Suite 2100
Atlanta, GA 30363-1031
Telephone:    404.873.8500
Facsimile:      404.873.8501

*Attorneys for Defendant Worldpay US, Inc.*

## CERTIFICATE OF COMPLIANCE AND SERVICE

The undersigned hereby certifies that on July 13, 2018, the foregoing document, which was prepared using 13-point Book Antiqua font, was filed electronically with the Clerk of Court, using the CM/ECF filing system, which will cause a copy of the same to be electronically served on the following counsel of record:

E. Adam Webb
Matthew C. Klase
G. Franklin Lemond, Jr.
Webb, Klase & Lemond, LLC
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339

*Attorneys for Plaintiff*

/s/ Edward A. Marshall
Edward A. Marshall
Ga Bar No. 471533