## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ALGHADEER BAKERY & MARKET, INC., on behalf of itself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) | CIVIL ACTION |
| v. ) | NO. 1:16-cv-03627-MLB |
| WORLDPAY US, INC., ) | |
| Defendant. ) | |
| ACEBEDO & JOHNSON, LLC, IDL QUAD GROUP, LLC, and MEDICAL LEGAL CONSULTANTS OF GREATER ATLANTA, LLC, on behalf of themselves and all others similarly situated, ) ) ) ) ) ) | |
| Plaintiffs, ) | CIVIL ACTION |
| v. ) | NO. 1:18-cv-02688-MLB |
| WORLDPAY US, INC., ) | |
| Defendant. ) | |

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL AND TO DIRECT NOTICE OF CLASS SETTLEMENT

Plaintiffs are pleased to report that the parties have agreed to a class settlement. *See* Exhibit A hereto. If approved, the settlement will provide important benefits to customers of Defendant Worldpay US, Inc. ("Worldpay" or "Defendant")[1] that were allegedly overcharged for payment processing services. First, Worldpay has agreed to establish a fund of $15 million to provide cash benefits to the class members as well as to cover notice and administration costs, legal fees and expenses, and service awards. Second, Defendant has agreed to make key revisions to its contractual terms that will ensure customers receive more advance notice of new fees and fee increases, more time to dispute fees, and a longer period to close their accounts without being required to pay termination fees (often $495).

By any objective measure, the settlement is fair, adequate, and reasonable and merits preliminary approval. Moreover, the notice program – consisting of direct email/mail notice to class members and a settlement website – comports with Rule 23 and due process. Respectfully, the Court should preliminarily approve the settlement, direct notice to the class, and schedule a final approval hearing. A proposed order approved by Defendant is filed herewith.

---

[1] Plaintiffs are authorized to state that Defendant does not oppose the relief requested in this motion. The arguments and contentions contained therein, however, are attributable to Plaintiffs.

## BACKGROUND

**A.**    **Factual Background.**    Plaintiffs are small businesses that retained Defendant to process their credit and debit card payments.    Plaintiffs allege that Worldpay fraudulently induced contractual relationships by failing to disclose fees it knew merchants would pay for its services and then subsequently breached the contract by increasing and adding new fees in violation of the terms and the implied covenant of good faith and fair dealing.    *E.g.*, Dkt. 1 (No. 18-cv-2688-MLB), ¶¶ 30-156, 208-31. Plaintiffs alternatively alleged that fine print contract provisions purporting to immunize Worldpay from misconduct were unenforceable and that Defendant had been unjustly enriched.    *Id.* at ¶¶ 157-199, 229, 232-39.    Plaintiffs sought recovery on behalf of a national class of small business merchants.

**B.**    **Procedural History.**[2]    The *Alghadeer* action was originally filed in state court on August 26, 2016, by Alghadeer Bakery and its owner Hameed Alburkat.    *See* Dkt. 1-1 (No. 16-cv-3627-MLB).    After removal and an initial motion to dismiss was filed, the complaint was amended.    Joint Decl., ¶¶ 14-16.    The parties then briefed a partial motion to dismiss.    *Id.* at ¶¶ 18-20.    While the motion was pending, the parties agreed to

---

[2]  A detailed summary of the pleadings, motion practice, discovery, and mediation/settlement negotiations is set forth in the Joint Declaration of E. Adam Webb and Matthew C. Klase ("Joint Decl."), filed herewith as Exhibit B.

a schedule, which was approved by the Court. *Id.* at ¶¶ 17. Counsel for Plaintiffs was also contacted by many other merchants that wanted to be added to the case. *Id.* at ¶ 21.

On June 6, 2017, the Court dismissed Mr. Alburkat for lack of standing and ordered discovery to determine which version of the form contract governed the Bakery's claims. *Id.* at ¶ 22. At the Court's request, the parties also entered into an agreement tolling the statutes of limitation applicable to the claims of other merchants that wanted to file their own cases (including Plaintiffs Acebedo, IDL Quad, and MLC). *Id.* at ¶¶ 23-24.

After taking discovery on the contract issue, the parties stipulated to the contract version governing the Bakery's claims. *Id.* at ¶¶ 25, 27. Defendant also answered the complaint. *Id.* at ¶ 26. At the Court's request, the parties engaged in settlement discussions through Magistrate Judge Baverman, albeit unsuccessfully. *Id.* at ¶¶ 28-29.

On September 19, 2017, Defendant moved for partial summary judgment on the Bakery's claims that several provisions of the contract were unenforceable and that Worldpay had been unjustly enriched. *Id.* at ¶ 30. The parties briefed this motion as well as a motion filed by the Bakery to defer ruling on summary judgment until further discovery was taken. *Id.* at ¶¶ 31-32. On December 18, 2017, the Court denied the motion to defer. *Id.* at ¶ 33.

At the Court's request, the parties began discovery on the Bakery's breach of contract claim. *Id.* at ¶¶ 34-42. Initially, the parties had disputes as to the scope of discovery, namely whether it should be confined to the Bakery's individual claim or open as to the claims of the putative class members. *Id.* at ¶¶ 35-37. Worldpay contended that the written notice of dispute served by the Bakery in accordance with the terms did not satisfy the putative class members' obligations to serve their own written disputes and as a result the class claims could not possibly succeed. *Id.* The parties briefed this issue and ultimately the Court indicated "that a named plaintiff's notice can be sufficient in terms of the rest of the class members who are properly in the same situation." *See* Dkt. 43 (No. 16-cv-3627-MLB).

Worldpay sought and obtained clarification from the Court that this ruling was not on the merits but was only made in the context of allowing class discovery to proceed. Joint Decl., ¶¶ 40-41. Class discovery opened on February 21, 2018. *Id.* at ¶¶ 42. Each party served multiple sets of written discovery, about which the parties met and conferred on several occasions. *Id.* at ¶¶ 42, 44. The parties also discussed the issues of preservation, ESI, discovery procedures, and confidentiality, and negotiated detailed protocols governing these issues. *Id.* at ¶ 43. The written discovery was responded to and another subpoena was served. *Id.* at ¶¶ 42-44. Roughly 4,000 pages of documents were produced and analyzed. *Id.* at ¶ 44.

During discovery, it became clear that the claims of Plaintiffs Acebedo, IDL Quad, and MLC were not dependent on the outcome of Defendant's summary judgment motion as to the Bakery. *Id.* at ¶ 45. Some merchants were subject to older, materially different versions of the contract (a/k/a "old paper") that did not include the terms at issue on summary judgment while others had been subjected to fee practices that were not at issue in the Bakery's case. *Id.*

As a result, these Plaintiffs terminated the tolling agreement and filed a new case against Worldpay which also asserted claims for breach of contract and unjust enrichment and added a claim for fraudulent inducement. *See* Dkt. 1 (No. 18-cv-2688-MLB). The parties met and conferred concerning the *Acebedo* complaint, agreed that discovery in the two cases should be coordinated, and moved the Court to adopt a new joint schedule, which the Court granted. Joint Decl., ¶ 48.

On July 13, 2018, Worldpay moved to dismiss the fraudulent inducement claim and the parties fully briefed the motion. *Id.* at ¶¶ 49-50. In the meantime, the parties continued with discovery and Worldpay produced an additional 45,000 pages of ESI, which counsel for Plaintiffs reviewed and coded. *Id.* at ¶ 51. In September 2018, the parties had discussions concerning the nature and scope of a mediation, including information Plaintiffs' expert needed to estimate class-wide damages. *Id.* at ¶ 52.

On October 16, 2018, the Court granted Worldpay's motion for partial summary judgment against the Bakery. *See* Dkt. 63 (No. 16-cv-3627-MLB). The Court found that the version of the contract terms applicable to the Bakery (i.e., "new paper") was enforceable and the unjust enrichment claim failed due to the existence of an enforceable contract. *Id.* Two days later, the parties moved to stay the cases pending mediation and such request was granted. Joint Decl., ¶¶ 53-54.

**C.** **Mediation and Settlement.** The parties retained well-respected class action mediator Hunter Hughes, III to conduct an in-person mediation. *Id.* at ¶ 55. To ensure the parties were adequately prepared, over the next several months Worldpay produced voluminous data to Plaintiffs and their renowned data expert, Arthur Olsen of Cassis Technology, LLC, including but not limited to lists of all small business (a/k/a ISO and SBU) customers, the contracts, statements, raw fee data for a statistically significant sample of current and former customers, and aggregate revenue figures earned by Worldpay for the class period. *Id.* at ¶¶ 56-62. More than 6,000 pages of contract and statement documents were ultimately produced, as well as enormous spreadsheets containing hundreds of thousands of lines of billing data. *Id.* at ¶¶ 57, 60.

Plaintiffs' expert organized the data, wrote code to extract overcharges relating to the fees at issue, and created demonstrative exhibits detailing his findings for use at the mediation, which were provided to Worldpay and Mr. Hughes. *Id.* at ¶ 63. The

parties also exchanged voluminous mediation statements that addressed the most significant merits and class certification issues at stake in the litigation. *Id.* at ¶¶ 64-65.

A full day of mediation occurred on April 26, 2019. *Id.* at ¶ 66. Negotiations were hotly contested and there was extensive disagreement on issues such as Plaintiffs' likelihood of obtaining class certification and prevailing on the merits, as well as the assumptions made by Plaintiffs' expert in estimating damages for merchants that were subject to older contracts. *Id.* However, there was enough common ground that the parties agreed to continue negotiations after Worldpay provided additional data to allow the parties to better estimate Worldpay's exposure to merchants with older contracts. *Id.* at ¶¶ 66-68. Spreadsheets with many thousands of additional lines of fee data were produced, "crunched" by the parties' experts, and revised damage estimates and supplemental mediation briefs were exchanged. *Id.* at ¶¶ 69-71.

The parties continued to negotiate through Mr. Hughes but were unable to reach a final agreement prior to the August 7, 2019 deadline set by the Court. *Id.* at ¶ 72. The Court thus lifted the stay and approved a revised litigation schedule. *Id.*

While resuming active litigation, the parties continued to negotiate and, on September 24, 2019, executed an MOU summarizing a class settlement. *Id.* at ¶¶ 73-74. The Court was informed of the settlement the following day. *Id.* at ¶ 75. The

negotiations were at arm's length and often difficult and the parties utilized Mr. Hughes' services to bridge particularly challenging issues.  *Id.* at ¶ 74.

The settlement's terms are detailed in the agreement filed herewith as Exhibit A. The following is a summary of the material terms of the settlement:

1.    <u>Settlement Class:</u>    The settlement class – an opt-out class under Rule 23(b)(3) – is defined as:

> All ISO and SBU merchants that entered into a payment card processing service contract with Defendant Worldpay US, Inc. and paid one or more of the Subject Fees between August 26, 2010, and the date of preliminary approval.[3]

Settlement, ¶ 41.  Several types of entities enumerated in the settlement are excluded from the class, most notably those owned by or affiliated with Defendant.  *Id.*

2.    <u>The Relief:</u>  The relief to settlement class members includes:

***Settlement Fund*** – Defendant will pay $15 million into an escrow account that will be used to pay cash benefits to class members, notice and administration costs, legal fees and expenses, service awards to the class representatives, and any necessary taxes.  Settlement, ¶ 42.  All settlement class members – roughly 295,000 in number – are eligible to receive a cash payment if they file a simple claim form. Settlement, ¶¶ 56, 66; Claim Form (Exh. 3 to Settlement); Joint Decl., ¶¶ 82-83.

---

[3] The "Subject Fees" are listed in paragraph 40 of the settlement agreement.

The amount of the cash payments is calculated as described in the allocation formula, a copy of which is attached as Exhibit 1 to the settlement.  Sixty percent of the net settlement fund (the amount remaining after payment of all other obligations) is allocated to settlement class members on "old paper" (i.e., the older, more merchant-friendly versions of the contract) and forty percent is allocated to settlement class members on "new paper" (i.e., the newer, more Worldpay-friendly versions of the contract).  These amounts will be split among both groups in the same manner, with (1) 20 percent being equally allocated, on a *per capita* basis, to each member, (2) 40 percent being allocated, *pro rata*, based on the total number of calendar months during which such member was a customer of Defendant during the class period, and (3) 40 percent being allocated, *pro rata*, based on the member's share of the total dollar volume of transactions processed through Defendant during the class period.

This allocation formula was chosen to account for the fact that some of the subject fees are service fees that are assessed periodically regardless of transaction volume, while others are dependent solely upon transaction volume.  Joint Decl., ¶ 84. These percentages comport with the analysis of Plaintiffs' expert as to the relative significance of the categories of challenged fees.  *Id.* at ¶ 85.  The allocation formula ensures that all class members will be fairly compensated relative to each other.  *Id.*

If the total of the cash claimed by settlement class members, costs of notice and administration, attorneys' fees and expenses, service awards, and any taxes is less than $10 million, then the difference between the total of all of those amounts and $10 million will be distributed *pro rata* to settlement class members filing claims. Settlement, ¶ 68.  If the total of all of those amounts is equal to or more than $10 million, any money remaining in the settlement fund after payment of all obligations will be returned to Defendant.  *Id.*

*Practice Changes* – In addition to funding the settlement, Defendant is bound to amend the terms and conditions applicable to current customers' contracts as follows:

   a. Prior to increasing or adding any non-pass-through fees, Defendant will notify affected customers via statement message at least 30 days prior to the effective date of such increase or addition.

   b. Any applicable early termination fee will be waived in the event of termination of the agreement by a customer within 60 days of an increase in (or new) non-pass-through fees *and* all statement messages advising of such fee increases must remind customers of this right.

   c. Customers will be permitted to dispute fees on their statements within 60 days from receipt or availability of their statements.

   d. The prevailing party in any dispute between customers and Defendant shall be entitled to recover their attorneys' fees.

Settlement, ¶ 43.

   3.    <u>Notice and Claim Program:</u>  Defendant possesses records containing an email address for the vast majority of settlement class members and a mailing address

for all members.  As a result, the parties propose to individually notify each class member.  The default notice mechanism is email notice containing a link to the claim form.  Joint Decl., ¶ 99.  Those class members whose email addresses are unavailable or as to whom an email is returned as undeliverable will be mailed a postcard notice with a claim form.  If a class member's postcard is returned as undeliverable, the settlement administrator will use reasonable efforts to locate a current mailing address.[4]  A long form notice, the claim form, and other relevant pleadings and information will be posted on a settlement website maintained by the administrator.  Class members may also file claims on the website.  Settlement, ¶¶ 53-59.

4.    <u>Attorneys' Fees and Expenses and Service Awards:</u>  Class counsel will apply to the Court for an award of legal fees and expenses.  The class will be notified that class counsel may request reimbursement of expenses they reasonably incurred up to $75,000 and attorneys' fees of up to one-third of the settlement amount.  Defendant will not oppose these requests.  *Id.* at ¶ 77.  Also, class counsel will apply for, and Defendant does not oppose, service awards of up to $10,000 for each class representative to compensate them for the efforts and risk they undertook on behalf of the class.  *Id.* at ¶ 79.

---

[4] Following a competitive bid process, the parties have chosen KCC to administer the settlement.  KCC is a well-known firm that has successfully administrated many class action settlements.  Joint Decl., ¶ 101; KCC Experience Brochure (Exh. 2 to Joint Decl.).

5.    <u>Release:</u>    The settlement class will release Defendant from claims relating to the issues raised in this case or that could have been raised.  In turn, Defendant will release the class members from any liability for payment of Defendant's legal fees and expenses incurred in this case.  The releases are set forth in more detail in paragraphs 71 through 75 of the settlement agreement.

## **ARGUMENT AND CITATION OF AUTHORITY**

**A.    Preliminary Approval and an Order Directing Notice Is Warranted.**    The law generally encourages the settlement of class actions.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement").  "Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process and are highly favored by the law."  *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000).  The Court has broad discretion in approving class settlements.  *Id.*

Approval is a two-step process.  First, a court conducts a preliminary review to determine whether the settlement is "within the range of possible approval."  *Agnone v. Camden County*, 2019 WL 1368634, *9 (S.D. Ga. Mar. 26, 2019); *also Melanie K. v. Horton*, 2015 WL 1799808, *2 (N.D. Ga. Apr. 15, 2015).  The court's primary

objective at this stage "is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 W. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2015). Second, *after* preliminary approval and notice to the class, the court assesses the settlement's ultimate merits at the final hearing. *Id.*

At this preliminary approval stage, there is no need to "conduct a trial on the merits." *Id.* Instead, a "court may rely upon the judgment of experienced counsel for the parties . . . [and] [a]bsent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007).

Some courts have held that preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted). Other courts apply the factors used for final approval, known as the *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a

settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.  Moreover, Congress recently amended Rule 23 to focus inquiry on the effectiveness of the method of relief distribution, the proposed attorneys' fees, any side agreements, and whether a settlement treats class members fairly *vis-à-vis* each other.  Fed. R. Civ. P. 23(e)(2)(C)(2)-(4).  Preliminary approval is warranted under all standards.

1.    <u>The Proposed Settlement Is the Result of Good Faith Negotiations, Is Not Obviously Deficient, and Falls within the Range of Reason.</u>  Here, the settlement was negotiated at arm's length, without collusion, and with the assistance of a respected mediator.  *See, e.g.*, *In re Checking*, 275 F.R.D. at 661 ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator lends further support to the absence of collusion").  Indeed, the settlement was the result of a full day of adversarial mediation and five months of additional negotiations and was entered only after the exchange of substantial discovery, expert analysis, and briefing on all relevant issues.  *See generally* Joint Decl.

Here, the settlement is not deficient and is within the range of reason. The amount of the settlement recovered for "old paper" merchants (i.e., $9 million) represents approximately 38 percent of their most likely recoverable trial damages and 160 percent of Worldpay's estimate of their damages. *Id.* at ¶¶ 91-92. The amount of the settlement recovered for "new paper" merchants (i.e., $6 million) represents a lesser percentage of recoverable trial damages given the rulings made by the Court to date and the strength of Defendant's remaining defenses. *Id.* at ¶¶ 91, 93. Based on the allocation formula, settlement class members will receive various amounts and some payments will be sizable. *Id.* at ¶ 94. Class members that remain customers of Worldpay will also receive non-monetary benefits in the form of important contract changes that give them more opportunity to address fee increases, preserve their right to challenge fee errors and discrepancies, and even the playing field in future fee disputes. Joint Decl., ¶ 95; Settlement, ¶ 43.

These benefits compare favorably with class settlements approved in other cases. *See, e.g., Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC*, 275 F. Supp. 3d 1350, 1354 (N.D. Ga. 2017) (class payment processing settlement recovering 25-50% of damages approved by Judge Cohen)[5]; *Lipuma v. American*

---

[5] Class counsel served as one of four lead firms for the class in *Mercury Payment* and believe the claims in that case were much stronger than the claims in this matter. Joint Decl., ¶ 96.

*Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (approving settlement that provided less than ten percent of the potential recovery); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (settlement providing six percent of damages approved and noting "fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean [it] is unfair or inadequate").

 2. The *Bennett* Factors Support Preliminary Approval.

 a. *The Risks of Continued Litigation Are Substantial.* The court weighs the first *Bennett* factor, the likelihood of success at trial, "against the amount and form of relief contained in the settlement." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (quotation omitted). This factor weighs in favor of approval where "success at trial is not certain for Plaintiff[s]." *Burrows v. Purchasing Power, LLC*, 2013 WL 10167232, *6 (S.D. Fla. Oct. 7, 2013). Although Plaintiffs are confident about their case, the risks involved cannot be disregarded. The Court has already held on summary judgment that class members like the Bakery on "new paper" were subject to enforceable contractual provisions giving Worldpay discretion to change fees and establishing rules for seeking the recovery of allegedly improper fees. Joint Decl., ¶ 88. Although the Court indicated in the context of discovery that a timely written notice from a class representative can satisfy the requirement for absent class members, this result was

not reached on the merits. *Id.* Likewise, Worldpay's motion to dismiss the fraudulent inducement claim was pending and, if granted, would have ended that claim. *Id.* at ¶¶ 49-50, 88. Worldpay also asserted a defense of voluntary payment (i.e., merchants continued to do business after being notified of the disputed fees). *Id.* at ¶ 88. Class certification also would have been challenging, as it usually is. *Id.* at ¶¶ 88-89. The risks of continued litigation were abundant and substantial.

      b.    <u>*The Settlement is Within the Range of Possible Recoveries and Is Fair, Adequate, and Reasonable.*</u> The second and third *Bennett* factors – whether the settlement is within the range of possible recoveries and is fair, adequate, and reasonable – can be considered together. *Burrows*, 2013 WL 10167232, at *6. "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1323. The range of outcomes extends from no liability to total victory and must be considered in light of the attendant risks. Thus, even a minimal settlement can be approved. *See, e.g., Behrens*, 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

      The settlement is within the range of possible recoveries, considering the continued litigation risks. As noted above, settlement class members collectively are

eligible to receive tangible monetary benefits and existing customers will benefit from the revised contract practices.  On the other hand, if for example the Court enforced the voluntary payment doctrine or declined to certify a class, settlement class members would recover nothing.  Given that class members are primarily small and mid-size businesses, even a delay in the outcome of the litigation would increase the risk that some of those customers impacted by the alleged practices would be unable to benefit from favorable rulings.   Under the circumstances here, the settlement is in the best interests of the class.

   c. *Continued Litigation Would Be Expensive and Lengthy.*   A settlement merits approval if it "will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing."  *Lipuma*, 406 F. Supp. 2d at 1324.  Such is the case here.   Approval will avoid additional complex, expensive, and lengthy litigation, saving resources of the parties and the Court.

   d. *The Degree of Opposition to the Settlement.*   Courts do not consider this factor until notice has not been provided to settlement class members. *See Columbus Drywall*, 258 F.R.D. at 560.

   e. *The Stage of Proceedings.*   The purpose of this factor is "to ensure that Plaintiff[] had access to sufficient information to adequately evaluate the

merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Class counsel and the class representatives conducted an extensive investigation before filing the case; obtained a great deal of discovery and mediation discovery from Defendant, including a database of tens-of-thousands of customer transactions from randomly selected merchants that allowed a qualified expert to estimate damages; briefed various legal issues in court and exchanged briefs with Defendant in the mediation process on the merits and class certification. *See generally* Joint Decl. As a result of this work, combined with their experience in handling other class actions, class counsel and the class representatives have access to sufficient information to adequately analyze the case's strengths and weaknesses and endorse the settlement. Joint Decl., ¶¶ 98-99.

3.    The Additional Rule 23(e) Factors Support Preliminary Approval.
Here, the proposed method of distributing relief is simple and straightforward. Fed. R. Civ. P. 23(e)(2)(C)(ii) (court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"). Class members need only complete and return a short, easy-to-understand claim form to get paid (via account credit if they are a current customer and via check if they are not). Claim forms can be returned via mail (postage is prepaid) or filled out by clicking on a link in the email notice or via the settlement website. Settlement, ¶ 56.

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." Here, the agreement provides for a fee of up to one-third of the settlement amount, following court approval and after any settlement becomes final. Settlement, ¶¶ 76-78. One-third is the most often-awarded common fund percentage in this Circuit. *E.g.*, *Wolff v. Cash 4 Titles*, 2012 WL 5290155, *5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in the Eleventh Circuit are "roughly one third"); *see also, e.g., Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1195-96 (11th Cir. 2019) (affirming one-third); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir 1999) (same).

There are no agreements between the parties other than the settlement. Fed. R. Civ. P. 23(e)(2)(C)(iii) ("the parties seeking approval must file a statement identifying any agreement made in connection with the proposal"); Joint Decl., ¶ 102.

Finally, all class members have the opportunity to receive a payment from the fund pursuant to an allocation formula that was designed to ensure that they will be fairly compensated relative to each other given the strength of their respective claims, the amount of months they incurred fees, and their overall transaction volume. Joint Decl., ¶¶ 84-85. The merchant-friendly changes to Defendant's form contracts will also provide great benefits to current customers. *Id.* In summary, all class members have the equivalent opportunity to benefit from the relief provided by the settlement.

**B.**    **The Settlement Class Should Be Certified.**    When a settlement is reached before certification, a court must determine whether to certify the settlement class. *See, e.g., Manual for Complex Litig.,* § 21.632 (4th ed. 2014); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).    Certification of a settlement class is proper when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied.    *E.g., Columbus Drywall*, 258 F.R.D. at 553.    "The decision to certify is within the broad discretion of the district court."    *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).    This case – which involves form contracts, a common course of billing conduct, and a common damages methodology – is the archetypical class action.    *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983).    Certification is warranted.

1.    <u>Numerosity</u>:    Rule (a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable."    Here, the settlement class consists of approximately 295,000 merchants, making joinder of all class members impossible.    Joint Decl., ¶ 82; *also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (40 members sufficient for numerosity).

2.    <u>Commonality</u>:    "[C]ommonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members,'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir.

2009), and "is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Terrill v. Electrolux Home Prods., Inc.*, 295 F.R.D. 671, 685 (S.D. Ga. 2013), *vacated and remanded on other grounds*, *Brown v. Electrolux Home Prods.*, 817 F.3d 1225 (11th Cir. 2016). In this case, all members of the settlement class assert the same legal claims, that they were injured in the same ways, and that their injuries resulted from Defendant's common billing practices. Proving their claims thus will involve numerous common questions of law and fact that will be resolved in the same way for all class members.

3.    Typicality: The typicality inquiry asks whether the named plaintiff's claims "have the same essential characteristics" as claims of the class members. *See, e.g., Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). The requirement is undemanding, *In re Disposable Contact Lens Anti. Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996), requiring only some nexus between the plaintiffs' claims and the common questions uniting the class. *See, e.g., Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). A sufficient nexus exists if the claims arise from the same pattern of conduct and arise from similar legal theories. *See, e.g., Williams*, 568 F.3d at 1357. Here, the claims of all class members arise from the same alleged misconduct and are based on the same legal theories.

4.     Adequacy of Representation:  In assessing the adequacy requirement, courts employ "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation."  *Columbus Drywall*, 258 F.R.D. at 555.  Plaintiffs do not have any interests antagonistic to other class members and have retained lawyers who are abundantly qualified and experienced.  Joint Decl., ¶¶ 2-4.

5.     Predominance:  Here, Plaintiffs allege that this case is certifiable under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . .  relief."  C*arriuolo v. GM Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Predominance does not require that all questions be common, but rather that "a significant aspect of the case . . . can be resolved for all members of the class in a single adjudication."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted).  Here, Plaintiffs contend that this requirement is met because the overwhelming issues of law and fact – regarding the contract terms and Defendant's billing practices thereunder – are common to the class

members.  From Plaintiffs' perspective, the only individual issue relates to damages, which does not defeat predominance (especially because damages can be calculated programmatically).  *Brown*, 817 F.3d at 1239 ("'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat predomina[nce]'").

6.  <u>Superiority</u>: Rule 23(b)(3) also requires a plaintiff to prove class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy."  "This inquiry focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (internal quotations omitted).  Litigating the claims of 295,000 settlement class members, each with relatively small potential damages, and requiring presentation of the same evidence and expert opinions over and over again, would obviously be inefficient. *See Terrill*, 295 F.R.D. at 697.  The superiority element is satisfied.

**C.    <u>The Court Should Approve the Proposed Notice Program.</u>**  Rule 23(e) requires the Court to direct notice to all class members who would be bound by a proposed settlement. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

The notice program provides notice to settlement class members by either email or U.S Mail.    Settlement, ¶¶ 53-59.    This notice program satisfies the requirements of due process and Rule 23(e) and should be approved.  Indeed, direct notice in class actions has traditionally been accomplished by U.S. Mail, and courts have long recognized that method as effective in notifying class members of their rights.  *See In re Nissan Motor Corp., Antitrust Litig.*, 552 F.2d 1088, 1097-98 (5th Cir. 1977) (holding that mailed notice should be used where the "last known address of those class members can be identified with reasonable effort").  As technology has made communication by email widely available, courts have approved notice plans where email was used in lieu of, or in addition to, notice by U.S. Mail.  *George v. Academy Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1368 (N.D. Ga. 2019).  Accordingly, direct notice by email and U.S. Mail satisfies due process requirements and should be approved.

## CONCLUSION

For the reasons set forth above and in the accompanying materials, Plaintiffs request that the Court grant this unopposed motion and enter an order to:  (1) preliminarily approve the proposed settlement; (2) certify the settlement class; (3) appoint Plaintiffs as class representatives and their counsel as class counsel; (4) approve the notice program; and (5) schedule the final approval hearing.

DATED this 13th day of December, 2019.

Respectfully submitted,

BY:   WEBB, KLASE & LEMOND, LLC

*/s/ E. Adam Webb*
E. Adam Webb
  Georgia Bar No. 743910
Matthew C. Klase
  Georgia Bar No. 141903

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-0773
(770) 217-9950 (fax)
Adam@WebbLLC.com
Matt@WebbLLC.com

*Attorneys for Plaintiffs*

## **TYPE AND FONT CERTIFICATION**

The undersigned certifies that this brief complies with Local Rule 5.1(B) regarding typefaces and fonts.

*/s/ E. Adam Webb*
E. Adam Webb

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December, 2019, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which automatically sends email notification of such filing to all attorneys of record.

*/s/ E. Adam Webb*
E. Adam Webb